**LINCOLN PROPERTY COMPANY,**
Appellant,

v.

**Casey Ray DeSHAZO, Appellee.**

No. 2–97–258–CV.

Court of Appeals of Texas,
Fort Worth.

Sept. 16, 1999.

Rehearing Overruled Oct. 28, 1999.

Shannon, Gracey, Ratliff & Miller, L.L.P., and J. Wade Birdwell, Fort Worth, for Appellant.

The Law Offices of Jeffrey H. Kobs, and Jeffrey H. Kobs, Fort Worth, for Appellee.

## OPINION ON REHEARING

DIXON W. HOLMAN, Justice.

Having granted the motion for rehearing en banc filed by Appellee Casey Ray DeShazo, we withdraw our January 7, 1999 opinion and judgment on the merits of the case and substitute the following.

### I. INTRODUCTION

Lincoln Property Company ("Lincoln") appeals from a jury verdict and trial court judgment that awarded DeShazo both compensatory and exemplary damages for injuries that he suffered because the company negligently failed to provide adequate security for his protection at a bar located in Lincoln's premises. Because the evidence is sufficient to support the jury's verdict, and because the trial court did not clearly abuse its discretion by allowing a former police officer to testify as an expert for DeShazo, we affirm the trial court's judgment.

### II. BACKGROUND

The appeal stems from a criminal assault that occurred on the Cityview Shopping Centre ("Cityview Centre") parking lot. At the time of the assault, Lincoln owned Cityview Centre and leased space to the Cheyenne Cattle Company ("Cheyenne"), Loews Theater, Tom Thumb, Stri-

pling Cox, and others. Lincoln had one security guard on duty to monitor the entire Cityview Centre. Cheyenne, a country-western bar, occasionally hosted events known to its patrons as "college nights." On those evenings, Cheyenne played contemporary music and although the bar did not serve alcoholic beverages to underage patrons, they were admitted inside to dance and socialize.

On January 28, 1993, DeShazo attended "college night" with two friends. About 2:00 a.m., having spent time in the bar, DeShazo went outside to the parking lot, where a crowd estimated at 200 to 250 persons were standing. DeShazo was in the valet parking area near the club's entrance and had just told some people to get away from his car when Mike Sprayberry hit DeShazo in the face.[1] The blow knocked DeShazo to the pavement. He struck his head on the curb, causing a bifrontal hemorrhagic contusion and a linear fracture of the skull. DeShazo later filed suit alleging that for several months before he was injured, Lincoln knew that customers of the bar were often assaulted in its parking lot during the repeated "under age beer festivals" called "college nights." He alleged that he was injured because of Lincoln's negligence and gross negligence that allowed an unreasonably dangerous condition to exist in the parking lot by intentionally having an insufficient number of security persons to discourage or prevent assaults by unruly persons who regularly congregated in the lot after midnight. DeShazo alleged that Lincoln's tolerance of that situation demonstrated a conscious disregard for the safety of persons on the scene.

After finding that Lincoln's negligence proximately caused DeShazo's injuries, the jury awarded him $57,679.96 in actual damages. After finding Lincoln grossly negligent, the jury awarded DeShazo $150,000 in exemplary damages. The trial court then assessed prejudgment interest, offset monies from co-defendants who settled with DeShazo,[2] and rendered a $188,669.97 judgment in DeShazo's favor.

On appeal, Lincoln asserts that the evidence was legally and factually insufficient to support the jury's finding that Lincoln's negligence proximately caused DeShazo's injuries; that the evidence was legally and factually insufficient to support the jury's finding that Lincoln was grossly negligent; and that the trial court should have excluded former police officer Edward Mazurek's testimony about the standard of care Lincoln should have met, Lincoln's negligence as a proximate cause of DeShazo's injuries, and Lincoln's gross negligence in the incident.

### III. MAZUREK'S QUALIFICATIONS

 The qualification of an expert witness is a matter within the trial court's discretion that will not be disturbed absent a clear abuse of discretion. *See Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995)). The party offering the expert's testimony bears the burden of proving that the witness is qualified under Rule 702 of the Texas Rules of Evidence. *See id.* at 152.

 Rule 702 requires that an expert be qualified "by knowledge, skill, experience, training, or education," and that his testimony will assist the trier of fact. Tex.R. Evid. 702; *see United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30–31 (Tex. 1997). That vests a trial court with the threshold responsibility of ensuring that an expert's testimony rests on a reliable

---

**1.** Sprayberry and DeShazo did not know each other. There was conflicting evidence on whether they were engaged in a verbal exchange or shoving match immediately before the assault.

**2.** DeShazo also sued Cheyenne and Smith Security Company but settled with them before trial.

foundation and is relevant to the issues of the case. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998). In meeting that responsibility, a trial court is not to determine whether an expert's conclusions are correct, but only whether the analysis used to reach those conclusions is reliable. *See id.*

■ Determining the admissibility of expert testimony within the scope of Rule 702 often requires courts to view proffered evidence from scientific fields such as medicine, physics, electronics, chemicals, or engineering. *See, e.g., Gammill*, 972 S.W.2d at 713 (a products liability suit involving mechanical devices); *Robinson*, 923 S.W.2d at 549 (a products liability suit involving a chemical). However, the rule applies not only to matters of science or technology in their traditional senses, it also allows a witness who has knowledge or experience that will assist the trier of fact to understand the evidence or to determine a vital fact issue. In *Robinson*, the Texas Supreme Court emphasized that six factors approved as being helpful to a trial court's determination of a proffered expert's scientific qualifications are not an exhaustive or exclusive list, and that the factors trial courts may consider will vary, dependent upon the subject matter of the case. *Robinson*, 923 S.W.2d at 557. Significantly, the supreme court has emphasized that a trial court's gatekeeping function under Rule 702 has not replaced cross-examination as "the traditional and appropriate means of attacking shaky but admissible evidence." *Gammill*, 972 S.W.2d at 728 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

■ The court allowed Mazurek to testify over Lincoln's objection that he lacked the expertise necessary to evaluate the security of the parking lot where DeShazo was assaulted. Mazurek's background includes ten years as a San Antonio police officer and experience "moonlighting" as a security officer for a major department store and for a hospital, both in San Antonio. Additionally, he has been head of security for North Star Mall in San Antonio and later was the agent in charge of the federal Drug Enforcement Administration (DEA) office in Lubbock. While with the DEA, Mazurek's duties included analyzing commercial properties to assess risks and threats associated with enforcement of federal laws against drug-related crimes that might be committed on those properties. Lincoln insists that Mazurek's security work experience is too remote and superficial to qualify him to testify as an expert witness before the jury in the trial of this case.

Mazurek testified that a reasonably prudent property owner would have employed at least five or six security officers to control the "college night" crowd outside the bar at the time of the assault. He said that DeShazo's injuries would not have occurred if Lincoln had provided the additional guards. Mazurek also testified that Lincoln was grossly negligent in providing only one security guard to patrol the entire Cityview Centre parking area, including the parking lot outside the bar. On the facts of this case, Lincoln's objection that Mazurek's professional experience in police and security work insufficiently qualifies him as an expert witness on the matters at issue in the trial addresses the credibility or weight of his testimony, not its admissibility.

The trial court viewed Lincoln's contention about the extent of Mazurek's expertise as simply a topic fit for proper cross-examination of Mazurek at the trial. The trial court did not act without reference to any guiding rules or principles in overruling Lincoln's objection to the admissibility of Mazurek as an expert witness, and we do not perceive that ruling as a clear abuse of discretion by the trial court. *See, e.g., Glasscock v. Income Property Servs.*, 888 S.W.2d 176, 180 (Tex.App.—Houston [1 st Dist.] 1994, writ dism'd by agr.) (a case in which a trial court's exclusion of the testimony of a proffered security expert was reversed by the court of appeals); *see also*

John F. Sutton, Jr., *Opinions & Expert Testimony, in* TEXAS RULES OF EVIDENCE HANDBOOK 629, 645 (Cathleen C. Herasimchuk ed., 3d ed. 1998) ("[A] court need not exclude expert testimony when the subject matter is within the comprehension of the average juror, and if the witness has *some* specialized knowledge on the same issue that would be helpful." [Emphasis added.]). We overrule Lincoln's point challenging the admissibility of Mazurek's testimony.

## IV. SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE NEGLIGENCE CLAIM

 In suits involving premises liability, a lessor generally has no duty to tenants or their invitees for dangerous conditions on the leased premises. *See Coleman v. Equitable Real Estate Inv. Management, Inc.,* 971 S.W.2d 611, 615 (Tex.App.—Dallas 1998, no pet). However, this rule is not absolute. A lessor who retains control over the premises has a duty to use ordinary care to protect invitees from criminal acts of third parties if the lessor knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *See Lefmark Management Co. v. Old,* 946 S.W.2d 52, 53 (Tex.1997). And whether that duty exists is a question of law for the court to decide under the facts surrounding the incident in which an invitee is injured by a third party's criminal acts. *See id.* at 53.

Lincoln argues that other than Mazurek's testimony, there is no evidence or insufficient evidence to support the jury's finding that Lincoln's breach of duty proximately caused DeShazo's injury. In determining a "no-evidence" point, we are to consider all of the evidence in the light most favorable to the party in whose favor the verdict has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998); *Merrell Dow Pharm., Inc. v. Hav-*

*ner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). A "no-evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharm.,* 953 S.W.2d at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362–63 (1960)).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.), *cert. denied,* —— U.S. ——, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

### Proximate Cause

 The two elements of proximate cause are cause in fact and foreseeability. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury and without it harm would not have occurred. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *See id.* Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not su-

perseded and will not be excused when the criminal conduct is a foreseeable result of such negligence. *See id.*

 Therefore, a plaintiff aspiring to prevail on a negligence claim must prove the existence of a duty, a breach of the duty, and damages caused by the breach. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995). To establish breach of duty, the plaintiff must either show that the defendant did something an ordinarily prudent person exercising ordinary care would not have done under those circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care. *See Gannett Outdoor Co. v. Kubeczka,* 710 S.W.2d 79, 87 (Tex.App.—Houston [14th Dist.] 1986, no writ). The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985).

 Cause in fact must be proven by evidence of probative force, and cannot be established by mere conjecture, guess, or speculation. *See Boys Clubs,* 907 S.W.2d at 477. The burden is on the plaintiff to present probative evidence that his injury was the natural and probable result of the defendant's negligence. *See id.* Thus, there must be some evidence in the record from which the jury could determine within a reasonable probability that the plaintiff's injuries would not have occurred without the defendant's breach. *See Leitch,* 935 S.W.2d at 119; *Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703, 706 (Tex.1970).

Article VII (7.3) of an addendum to the lease by which Lincoln became the bar's landlord confirms that upon entering the lease, Lincoln foresaw security dangers for persons who would be in the bar's parking area:

1) Tenant [the bar] shall provide, at its expense, for clean up of the parking area and landscape area ... *before 9:00 a.m. on the following day after Tenant has been open for business.*
2) Tenant shall provide, at its expense, for two (2) security employees to patrol outside the demised premises, along the corridors, and in the parking area ... during all times that Tenant is open for business. Tenant agrees to provide Landlord [Lincoln] with incident reports for any material altercations.
*If Tenant fails to provide these services, Landlord shall have the right to perform such services and charge as additional rental the reasonable cost thereof.* [Emphasis added.]

The lease addendum is in evidence as plaintiff's exhibit 4. The record establishes that neither the bar nor Lincoln provided two security employees to patrol the parking lot.

In *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456 (Tex.1992), a convenience store clerk working the late-night shift disappeared from the store and was later found murdered. *Id.* at 457. The victim's family filed suit against E–Z Mart, alleging that the store was negligent in failing to provide security on the premises and that this negligence caused the victim's abduction and murder. Although the jury agreed and found in favor of the parents, the court of appeals reversed, concluding that there was no evidence that the store's failure to provide adequate security was a cause in fact of Havner's death.

The Supreme Court reversed the court of appeals in *Havner,* noting the extensive evidence tending to establish that the store's security was deficient and that this deficiency caused the victim's death. *See id.* at 462. The court found that although the precise circumstances of the murder would never be known, the plaintiffs had introduced enough evidence for the jury to conclude that the store's inadequate security system was a cause of the victim's death. *See id.* at 460.

Here, admissible evidence on the effect that additional security would have made not only came from Mazurek, but also from Eric Wheat, a former security guard at Cityview Centre who had worked security there on "college nights." Wheat testified that he would have needed two or three additional guards to keep the crowd outside the bar moving. He also said that this security was important to prevent fights and "keep the rowdiness down." Wheat testified that if the crowd was moved off the property, fights were less likely to occur. He also testified that he had reported to Lincoln that "one guy alone can't patrol that whole property out there.... It's just impossible for one guy to watch everybody." He told the jury he would like to have two or three security guards working there together. We have already addressed Mazurek's testimony and will not repeat it here.

Laquita Frost, Lincoln's manager for the property testified that before DeShazo was injured, she was aware "things can break out if you don't keep them under control." She acknowledged that she was aware that there were numerous beer bottles in the parking lot every morning, left from the night before. She also knew the bottles were from bar patrons who would temporarily leave the bar to go to their cars and drink, then go back inside the bar. She had considered the possibility that those people were underage drinkers, and she had received reports of fights in the parking lot. She had received complaints about the parking lot problems from the manager of the Sony theater next door to the bar and she received crime reports. As property manager, Frost had asked her superiors at Lincoln for a budget increase to employ additional security guards. Lincoln denied her request.

William Bronson, manager of the theater, was an eyewitness to break-ins, vandalism, thrown bottles, and fist fights in the parking lot. He had reported those events to Lincoln. He described the haz-

ards of driving a vehicle through the parking lot:

[I]f I went that way, it would be slow going and a lot of rowdy people, sometimes bumping up against your car, sitting on it. They'd push each other over on your hood or whatever. It got kind of rowdy sometimes.

Larry Venrick, the lone private security guard for the entire shopping center the night DeShazo was injured, had held the job for two years before that night. He testified that he *would not approach* the hundreds of people drinking in the bar's parking lot "[b]ecause I don't want to get hit upside the head by some 19 year-old kid, it's just as plain as that."

■ The record contains sufficient admissible evidence from which the jury could determine within a reasonable probability that DeShazo's injuries would not have occurred if Lincoln, having knowledge of a recurring, volatile, and unreasonably dangerous situation in the bar's parking lot, had provided more security officers to police it. The evidence was legally and factually sufficient to support the jury's finding that Lincoln's negligence was a proximate cause of DeShazo's injuries. We overrule Lincoln's challenge of that point.

## V. GROSS NEGLIGENCE

Lincoln contends that the evidence is legally and factually insufficient to uphold the jury's finding that it was grossly negligent. Lincoln's argument is that absent sufficient evidence to support the jury's finding of proximate cause, DeShazo is not entitled to exemplary damages, and that there is insufficient evidence of gross negligence because the only witness to testify on this issue (Mazurek) was not qualified as an expert.

Under Texas law, exemplary damages are not recoverable absent an award of actual damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.004(a) (Vernon 1997); *Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 852 (Tex.1995). Because there was

legally and factually sufficient evidence to support the actual damages award for negligence, DeShazo is entitled to the exemplary damages awarded. Further, because we have held that the trial court did not clearly abuse its discretion by admitting Mazurek's testimony, we find sufficient evidence in the record to support the jury's exemplary damages award. We overrule Lincoln's challenge of the exemplary damages.

## VI. CONCLUSION

We have carefully reviewed the record and have carefully considered each of Lincoln's points on appeal. Each point has been overruled. We affirm the jury's verdict and the trial court's judgment.