19 S.W.3d 525 (2000)
In the Interest of D.S., D.S., D.S., and C.R.R. Appellant.
No. 2-99-256-CV.
Court of Appeals of Texas, Fort Worth.
May 4, 2000.
*527 David A. Pearson, IV, Fort Worth, for Appellant.
Tim Curry, Criminal District Attorney; Charles M. Mallin, Assistant Criminal District Attorney and Chief of the Appellate Division; Helena A. Faulkner, Assistant Criminal District Attorney, Fort Worth, for Appellee.
Panel F: HOLMAN, J.; CAYCE, C.J.; and GARDNER, J.

OPINION
DIXON W. HOLMAN, Justice.
Appellant Helen Ransom appeals the trial court's order terminating her parental rights of her four children, D.S., D.S., D.S., and C.R.R. Appellant argues that the trial court abused its discretion by admitting Dr. John Hunt's expert opinion regarding the cause of D.S.'s burns and by admitting Appellant's statement that she made to a Child Protective Services (CPS) caseworker. Because the trial court did not abuse its discretion, we affirm the trial court's judgment.

I. BACKGROUND
Appellant has a long history with CPS. On May 6, 1997, CPS was contacted to investigate allegations of child abuse concerning D.S. She had been admitted to the hospital three hours after receiving third-degree burns over one-third of her body from her waist down to her toes. When asked how the burns occurred, Appellant explained that their house had been full of people, that she heard a scream, and found D.S. in the bathtub. Appellant told her sister a different story and insisted that D.S. had turned on the hot water while Appellant had been bathing her. During the trial regarding Appellant's parental rights, the State offered the testimony of Dr. Hunt in support of terminating those rights. Dr. Hunt testified that the burn pattern on D.S.'s body was consistent with someone who was forced and pushed down into hot water and was inconsistent with a child who had turned on hot water while bathing. After hearing the evidence and finding termination to be in the children's best interest, the trial court terminated Appellant's parental rights and awarded custody to the Texas Department of Protective and Regulatory Services and Ray Robinson, C.R.R.'s father.

II. STANDARD OF REVIEW
The decision whether to admit evidence rests within the sound discretion of the trial court. See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex.1995); Oyster Creek Fin. Corp. v. Richwood Inv. II, Inc., 957 S.W.2d 640, 646 (Tex.App.-Amarillo 1997, pet. denied). An abuse of discretion occurs where the trial court acts without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. See Goode v. Shoukfeh, *528 943 S.W.2d 441, 446 (Tex.1997); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
Under this standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. See Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex.1991); Texas Dep't of Health v. Buckner, 950 S.W.2d 216, 218 (Tex.App.-Fort Worth 1997, no pet.). However, simply because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. See Downer, 701 S.W.2d at 241-42. Nor does an abuse of discretion occur where the trial court bases its decisions on conflicting evidence or where there is some evidence of a substantive and probative character to support the trial court's decision. See Goode, 943 S.W.2d at 446; Davis v. Huey, 571 S.W.2d 859, 862 (Tex.1978); Holley v. Holley, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

III. EXPERT TESTIMONY
Appellant contends that the trial court erred by admitting Dr. Hunt's theory that D.S. suffered an immersion burn because the State did not demonstrate that the underlying scientific technique used to form his theory was reliable.[1]See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993); Robinson, 923 S.W.2d at 555. When asked on direct to describe the burn pattern on the lower trunk of D.S.'s body, Dr. Hunt responded as follows:
The pattern of the burn was, it began about the mid part of the abdomen, just a little bit above the bellybutton and extended down all the way down to and including the feet. On the abdomen, the area of the groins were spared, the crease where you would, from your thigh up to your belly, and the burn itself was ratherthe appearance as far as the color was sort of the same when you looked at [it from] top to bottom except the areas where the skin had peeled. Behind each knee was spared. There was no burn in the crease behind the knee on either leg. The soles of the feet had not had any blisters but other areas did have blisters, so there was whatand it appeared to be an immersiontype of burn.
Appellant's counsel objected to Dr. Hunt's testimony and insisted that it called for an expert opinion and that the State had failed to establish the basis for Dr. Hunt's conclusion that D.S. had suffered an immersion burn. Appellant then asked the court to instruct the State to lay the predicate mandated for scientific evidence under the Daubert/Robinson standard. The court overruled the objection, accepted Dr. Hunt as an expert, and admitted his opinion that D.S. had suffered an immersion burn.
Expert testimony commonly is in the form of an opinion. See Ford Motor Co. v. Aguiniga, 9 S.W.3d 252, 262 (Tex. App.-San Antonio 1999, pet. filed). Whether the opinion rises to the level of admissible evidence is determined by the rules of evidence. See generally TEX. R. EVID. 702; Aguiniga, 9 S.W.3d at 262. Rule 702 requires that an expert be qualified "by knowledge, skill, experience, training, or education," and that his testimony assist the trier of fact in understanding the evidence or determining a fact in issue. TEX. R. EVID. 702; see also Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 712 (Tex.1997), cert. denied, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); Lincoln Property Co. v. DeShazo, 4 S.W.3d 55, 58 (Tex.App.-Fort Worth *529 1999, pet. denied). Another requirement is that the testimony be relevant and reliable. See Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 728 (Tex. 1998); Robinson, 923 S.W.2d at 556; Aguiniga, 9 S.W.3d at 262; DeShazo, 4 S.W.3d at 58-59 (explaining that courts should not determine whether the expert's conclusion is correct, but rather whether the analysis used to reach it is reliable).
Determining the admissibility of expert testimony within the scope of Rule 702 often requires courts to view proffered evidence from scientific fields such as medicine, physics, electronics, chemicals, or engineering. See DeShazo, 4 S.W.3d at 59. Rule 702 not only applies to scientific and technical matters in their traditional senses; it applies equally to witnesses with specialized knowledge or experience and allows them to determine ultimate issues of fact. See id. In Robinson, the Texas Supreme Court espoused six factors that it felt would be helpful in determining whether expert testimony is reliable: (1) the extent to which the theory underlying the expert's testimony has been tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory. See Robinson, 923 S.W.2d at 556-57.
Appellant argues that Dr. Hunt's theory that D.S. had been forcibly immersed in hot water was unreliable because it could not be evaluated under the Daubert/Robinson factors. Although the State concedes that Dr. Hunt's testimony does not conform to the Daubert/Robinson factors, it argues that those factors are not exclusive and that reliability can be achieved based upon the expertise and skill of a testifying expert. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1169, 143 L.Ed.2d 238 (1999); Gammill, 972 S.W.2d at 722; Olin Corp. v. Smith, 990 S.W.2d 789, 795-96 (Tex. App.-Austin 1999, pet. denied). We agree that Dr. Hunt's expert testimony is not the type of testimony that can be easily evaluated under the Daubert/Robinson factors. Courts are often confronted with both scientific and non-scientific evidence in determining the admissibility of expert testimony. The difference between these two types of evidence is that the former is based on the application of scientific principles which can be readily tested by those factors, while the latter is based on skill or on experience based on observation. See Aguiniga, 9 S.W.3d at 263. Dr. Hunt testified that his theory was not subject to human testing in medical laboratories because it would be immoral to intentionally submerge children in hot liquids in order to study the effects of the burns. Dr. Hunt also testified that there is not any statistical data showing the potential rate of error due to the fact that no one conducts this type of experiment. Dr. Hunt did specify, however, that there are objective criteria that people who have experience treating pediatric burns identify to determine the cause and nature of the burn. Because Dr. Hunt's opinion concerning the cause of D.S.'s burns is not the type of evidence that can be readily evaluated under the Daubert/Robinson factors, we will apply the more general reliability test espoused in Gammill.
To resolve the controversy when faced with non-scientific evidence like Dr. Hunt's testimony, courts must analyze the underlying data forming the basis for the expert's opinion. See Gammill, 972 S.W.2d at 726. The critical inquiry is whether there is an "analytical gap" between the opinion and the basis on which it is founded. See id. Dr. Hunt testified that he was a general surgeon on staff at the Southwestern Medical School in Dallas and co-director of the Parkland Burn Unit (Burn Unit). He has over twenty-five years' experience in treating both adult *530 and pediatric burn victims. Dr. Hunt observed and treated D.S. after her arrival at the Burn Unit on May 6. He explained the principles and methods used to determine whether or not abuse was involved in causing the victim's burns. Dr. Hunt stated that it is crucial to study the distribution of the victim's burns and to compare it with the explanation given based on the body's normal response when contacted with a hot liquid. For instance, a person typically will try to withdraw from the hot liquid; therefore, accidental burns are characterized by splash marks and uneven distributions of burned skin. On the other hand, where abuse is involved, the burn's distribution is fixed and appears as a straight line. Dr. Hunt testified that D.S.'s burns were evenly distributed and that there were no splash marks on her. Based on this testimony, the trial court could have found that Dr. Hunt's testimony regarding the cause of D.S.'s burns was reliable. We overrule point one.

IV. THE INTERVIEW IN JAIL
Ann Shaffer, a CPS caseworker, interviewed Appellant on January 28, 1999, while she was incarcerated in the Tarrant County Jail. On that same day, the court appointed a guardian ad litem to represent Appellant's interests in the civil case with respect to her parental rights. Shaffer testified that during the interview, Appellant told her that D.S. had turned on the hot water faucet herself. Appellant contends that the trial court abused its discretion by admitting this testimony because the admission was made after a guardian ad litem had been appointed to represent her.
Appellant argues that the relationship between a disabled party and her guardian ad litem should be afforded the same protection as the attorney-client relationship. Appellant relies on In re News Am. Pub., Inc., 974 S.W.2d 97, 100 (Tex.App.-San Antonio 1998, no pet.), for the proposition that an attorney should not orchestrate or encourage contact between herself or her client and an opposing party who is represented by counsel unless the opposing counsel has consented to such contact. Appellant claims that although the interview did not directly involve the State's attorney, Shaffer was acting as an agent of the State and that it derived an illicit benefit from the interview.
After carefully reviewing the record, we find no evidence that the State sent Shaffer or encouraged her to interview Appellant. We are also unpersuaded by the argument that Shaffer was acting as an agent of the State. Shaffer stated that the reason she went to see Appellant was to insure that she knew about the upcoming trial and to talk about Appellant's children. She testified that she had not talked with the police or the district attorney's office. There is no evidence in the record that Shaffer knew or should have known that a guardian ad litem had been appointed to represent Appellant at the time Shaffer went to see her in jail. In fact, there is no evidence demonstrating the timing between Shaffer's visit and the guardian ad litem's appointment. The court could have reasoned that it was just as likely that Shaffer visited Appellant before the appointment as it was that she visited after the appointment. We overrule point two.

V. CONCLUSION
Because the trial court did not abuse its discretion by admitting Dr. Hunt's opinion concerning the cause of D.S.'s burns and Appellant's statement to Shaffer, we affirm the trial court's judgment.
NOTES
[1] Appellant does not challenge whether Dr. Hunt's opinion was relevant or whether Dr. Hunt was qualified as an expert.