# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00679-CV

Tariq Majeed, Appellant

v.

Sajjad Hussain, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-01-001209, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

In this appeal from a jury trial in which the jury found that appellant Tariq Majeed's negligence proximately caused damage to appellee Sajjad Hussain, the majority overturns the jury's verdict by concluding that there was no evidence or factually insufficient evidence of the cause-in-fact component of proximate cause. The majority invades the classic function of the jury. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) (reviewing court "must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it"); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (credibility determinations, weighing of the evidence, and drawing reasonable inferences from the facts are jury functions). Because I would conclude that the evidence was legally and factually sufficient to

support the jury's findings, I would affirm the district court's judgment awarding damages to Hussain.[1]  I therefore respectfully dissent.[2]

*Background*

Hussain worked for Majeed as a cashier at Corner Quick Stop, a gas station and convenience store located at 1425 East 12th Street in Austin.[3]  The store was not a "walk-in" store. Customers ordered their items and paid for their gas through a "drive-thru" window.  The window, however, was broken and had to be removed each day in order for Hussain, as the cashier, to transact business with the store's customers.  One afternoon in July 2000, Hussain was injured at the store when an unidentified third party threw a can through the open window.  The can struck Hussain in the right eye.

Hussain thereafter filed suit against Majeed alleging among his claims that Majeed negligently failed to provide a safe work place and that his negligence caused Hussain's injuries. Hussain alleged that Majeed owed a duty to maintain a secure and safe work environment for

---

[1]  The district court awarded damages totaling $377,811.19 based upon the jury's findings of $65,000 for past physical pain and mental anguish, $50,000 for future physical pain and mental anguish, $5,720 for past lost wages, $65,000 for past physical impairment, $190,000 for future physical impairment, and $2,091.19 for past medical expenses.  The final judgment is also against a co-defendant, Muhammad Naeem, who did not appear, was not represented by counsel at trial, and is not a party to this appeal.

[2]  I limit my analysis to the issue of cause in fact addressed by the majority.  *See* Tex. R. App. P. 47.1, 47.5.  In two other issues unaddressed by the majority, Majeed challenges the sufficiency of the evidence to support foreseeable risk of harm, duty, and the medical expenses and physical impairment damages.  I also would overrule these issues because I would conclude that the evidence was sufficient to support the jury's findings.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

[3]  Whether Hussain worked for Majeed or for the co-defendant Naeem was disputed at trial.

2

Hussain, and that Majeed was negligent in carrying out this duty by, among other things, "[f]ailing to provide or required [sic] adequate security devices, including a safe and secure transaction window such as those provided by similar convenience stores in the area, to ensure the safety of the employees and business invitees on the premises."

## *The Trial*

At the jury trial in April 2008, two witnesses testified—Hussain and Majeed. Majeed, however, did not attend the trial and testified by way of deposition. Majeed testified that he did not know Hussain before the lawsuit, that he sublet the store to Naeem who then employed Hussain, and that Naeem was responsible for the store. In contrast, Hussain testified that Majeed hired him, that he worked for Majeed at the store for several months before the assault, and that Majeed visited the store every week. The documentary evidence admitted at trial included Austin crime statistics for the years 1998 through 2000, Hussain's medical records concerning his eye injury, and lease and other agreements concerning the store.

Viewing the evidence in the light most favorable to the verdict, the evidence showed that (i) the store was located in the "highest crime area" in Austin;[4] (ii) at the time of Hussain's

---

[4] Hussain testified:

Q.  Do you have any knowledge of the crime activity that goes on in the area around the 1425 East 12th Street?

A.  It's the highest crime area in Austin, Texas.

Hussain also testified that the co-defendant Naeem "got stabbed really bad at the same location." He further testified that "if you just watch Channel 8 Austin News, you're going to hear everything what happened on East 12th Street, Chicon Area." The record also includes City of Austin crime

3

injury, the transaction window was broken, and Hussain physically had "to take the window out" when he began work each day;[5] and (iii) Hussain's eye was permanently injured when the unidentified third party threw the can through the open space of the missing window.[6]

---

statistics for the area immediately surrounding the store for the years 1998, 1999, and 2000. The statistics show numerous aggravated assaults in the area for each year, as well as robberies, burglaries, rapes, and murders.

[5] Hussain testified at trial: "It was not a walk-in store; it was a drive-thru window, but the window was really big. And the window, you can only—if you're going to open, you're going to open one time in the morning. If you close, you put the stick behind that. There was no safety you can slide around, nothing. It was really broke." He further testified:

Q. All right. So it was a sliding window?

A. Sliding window, but the sliding window was not working. It was broke.

Q. Did not work.

A. Yeah.

Q. Okay. And then—so you had to take the window out?

A. Yeah, you've got to take the window out.

[6] Concerning the assault, Hussain testified that a male customer tried to purchase cigarettes at the store but, when Hussain asked the customer for identification, the customer left. A short time later, the customer came back and asked Hussain to buy some beer. Hussain again asked the customer for identification. This time, the customer got angry and threw a can at Hussain that hit Hussain's right eye.

Hussain's medical records concerning the injury to his right eye were admitted at trial, and he testified that, as a result of his injury, he was permanently blind in that eye. He testified that he was 20 years old and experienced "really bad pain" at the time of his injury and that the pain did not stop until he went to the hospital and received treatment. Hussain also testified that he has not been able to see out of his right eye since he was injured and that everything is "completely dark."

*Evidence of Cause In Fact*

Generally, a person has no legal duty to protect another from criminal acts of a third party. *Timberwalk Apts. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). Employers, however, "have a duty to use ordinary care in providing a safe work place." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996); *see Sears, Roebuck & Co. v. Robinson*, 280 S.W.2d 238, 240 (Tex. 1955) (an employer has a duty "to use reasonable care to provide his [employees] with a reasonably safe place to work"). And this duty includes using ordinary care to protect employees against unreasonable and foreseeable risks of harm from criminal acts of third parties. *See Allen v. Connolly*, 158 S.W.3d 61, 66 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (concerning criminal acts of third parties, employer's duty to employee to provide safe work place the same as premises occupier's duty to protect invitees from such criminal acts).

To prevail on his negligence cause of action then, Hussain had to establish that Majeed failed in his duty to use ordinary care to provide a safe work place, including against unreasonable and foreseeable risks of harm from criminal acts of third parties, and that this failure proximately caused Hussain damages. *See id.*; *see also Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) ("The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty."). Concerning proximate cause, Hussain had to establish cause in fact and foreseeability. *See Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005).

In its analysis, the majority discusses only the cause-in-fact component of proximate cause. The majority reverses the jury's verdict by concluding that, even if the window "had not been

5

broken and consisted of bulletproof glass," there was no evidence that it would have prevented the assault because it "remains speculative on this record whether or not the window would have been closed at the time Hussain's assailant threw the can." *See Doe*, 907 S.W.2d at 477 (cause in fact "cannot be established by mere conjecture, guess, or speculation"). The majority focuses on the store's actual window, misconstruing Hussain's allegations. Hussain alleged that Majeed should have provided a "safe and secure transaction window such as those provided by similar convenience stores in the area." In other words, his complaint included that the store's transaction window, even if it had been functioning at the time of the assault, was not adequate to protect him.

The majority's desultory analysis also fails to view the evidence in the light most favorable to the verdict in the context of the unchallenged definitions and instructions submitted to the jury. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (reviewing court measures sufficiency of the evidence against instructions and definitions when unchallenged). The jury was asked to determine whether the negligence of Majeed "proximately cause[d] the occurrence in question involving the criminal acts of an unidentified third-party." The jury instructions accompanying this question included the following definition of proximate cause:

> **"Proximate cause"** means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event. But, if an act or omission of anyone who is not a party to the suit was the "sole proximate cause

6

of an occurrence, then the act or omission of any party could not have been a proximate cause.[7]

The jury was further instructed generally that facts are established by direct and circumstantial evidence and that "[a] fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved."

Majeed does not challenge the jury's finding that the failure to provide security for the store's employees, including a secure transaction window, was negligent. The issue then concerning cause in fact is whether, viewing the evidence in the light most favorable to the verdict and indulging all reasonable inferences in favor of the verdict, there is some evidence to support the jury's finding that "the act or omission complained of"—the failure to provide a secure transaction window—was a cause which, "in a natural and continuous sequence, unbroken by any new and

---

[7] The jury also was given the following definitions of "negligence," "ordinary care," and "new and independent cause":

**"Negligence"** means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

**"Ordinary Care"** means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

. . .

**"New and independent cause"** means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

7

independent cause, produce[d] [Hussain's injury]", and "without which cause such [injury] would not have occurred."**[8]**

This causation determination does not require "scientific or technical explanation." *See K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360-61 (Tex. 2000). The types of transaction windows available and typically utilized by self-service gas stations and convenience stores in high crime areas when the window serves as the only contact point with customers is a matter of fact within the common knowledge of the community. *See Guevara v. Ferrer*, 247 S.W.3d 662, 666 (Tex. 2007) (submission of causation issue to a jury is warranted when, under the evidence, layperson's "general experience and common sense" will enable a layperson "to determine, with reasonable probability, the causal relationship between the event and the condition"); *Honeycutt*, 24 S.W.3d at 360-61 (expert testimony on causation "not helpful to the jury . . . [on] matters within the average juror's common knowledge"); *Missouri Pac. R.R. v. Kimbrell*, 334 S.W.2d 283, 286 (Tex. 1960) (jury may consider as proven any matter that is in common knowledge of community). And the primary purpose of these types of transaction windows—i.e., security—is obvious and a matter of common sense and knowledge. It was within the jury's competence, therefore, to

---

**[8]** To the extent the majority considers the sufficiency of the evidence based upon (i) the test of cause in fact whether the act or omission was a "substantial factor" in causing the injury or (ii) the principle of law that there can be no cause in fact if the defendant's negligence merely furnished a condition that made the injury possible, the jury was not so instructed. *See Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *see, e.g.*, *Transcontinental Ins. Co. v. Crump*, No. 09-0005, 2010 Tex. LEXIS 616, at *29-33 (Tex. 2010) (discussion of "substantial factor" definition for cause in fact); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007) (in products liability context, definition of "producing cause" submitted to jury should contain "substantial factor" language); *see also* State Bar of Tex., Texas Pattern Jury Charges-General Negligence PJC 2.4, Comment (2008) (comment raises question whether proximate cause definition should include "substantial factor" language in light of supreme court's analysis in *Ledesma*).

8

determine the ultimate question of whether the lack of a secure transaction window was a cause in fact of Hussain's injury. *See Honeycutt*, 24 S.W.3d at 361; *see also Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 755-56 (Tex. 1975) (citation omitted) ("[W]hether a particular act of negligence is a cause in fact of an injury has been said to be a particularly apt question for jury determination.").

Here the jury could have credited the evidence of how the assault occurred to fairly and reasonably infer that, had the store had such a window, the can would not have struck Hussain's eye. *See City of Keller*, 168 S.W.3d at 822; *see also Farley*, 529 S.W.2d at 755-56 (proximate cause, "like any other ultimate fact," may be established by circumstantial evidence). Although the record does not contain a picture of the store or its broken transaction window, Hussain described both to the jury, including with physical demonstrations that are not explicitly transcribed in the record. He testified:

> A.  It was a drive-thru. It was a window probably like that big (indicating), but the window door was broke. I mean, when you opened the door in the morning, you've got to take the window on the side. So when you close, you put the big stick in the back to just close it. So there was no lock and nothing on the window.
>
> . . .
>
> A.  . . . the window is like this, and we had a display on the top for the cigarettes. . .

The jury observed Hussain's physical demonstrations, and it was within its province to credit this evidence, as well as his testimony concerning the security at the store and the assault.[9] Further,

---

[9] Hussain testified concerning the security at the store:

Q.  Okay. Now, I would like to talk to you about the security at the Corner Quick

9

Majeed did not object to Hussain's physical demonstrations to the jury and failed to request that the record reflect the substance of his demonstrations. The burden was on Majeed "to see that a sufficient record is presented to show error requiring reversal." *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990). And we presume that missing portions of the record are relevant and support the judgment. *See Feldman v. Marks*, 960 S.W.2d 613, 614 (Tex. 1996).

The jury also could have credited the evidence of the "missing" videotape from the day of Hussain's injury. Hussain testified that there was a security camera with seven videotapes that were used on a rotating basis—one for each day of the week. Hussain did not go back to the

---

Stop. Was there an on-duty police officer at the Corner Quick Stop?

A.    No, sir.

Q.    Was there an off-duty police officer at the Corner Quick Stop?

A.    No, sir.

Q.    Was there any form of a security guard at the Corner Quick Stop?

A.    No, sir.

Q.    Was there a bulletproof glass that covered the entire counter over at the Corner Quick Stop?

A.    No, sir.

Majeed denied knowledge of the security measures at the store prior to the suit. For example, when asked if he had "any information in relation to a functioning bulletproof glass at all at that location," Majeed answered "I don't know." Crediting the evidence that Majeed visited the store every week for several months prior to the assault, Majeed's denial of knowledge of the store's security measures was highly improbable. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

store after he was taken to the hospital for some time, the videotape was not turned over to the police although the police immediately investigated the incident, and Majeed did not make it available for viewing at any time. Majeed also failed to provide an explanation as to what happened to the videotape. The jury could fairly and reasonably have inferred that Majeed did not make the videotape available because it further would have shown that a secure transaction window would have prevented Hussain's injury. *See id.*

It is simply common sense that the failure to provide a secure transaction window was a cause in fact of Hussain's injury. *See, e.g.*, *Del Lago Partners v. Smith*, 307 S.W.3d 762, 774-75 (Tex. 2010) (jury verdict upheld against the owners of a bar in favor of a patron who was seriously injured when a fight broke out among bar customers at closing time; citing evidence including testimony that the situation "easily could've been avoided," court concluded that jury could have found "mere presence of uniformed security personnel" could have defused the situation and prevented the "violent brawl at closing time" or that the jury could have reasonably determined that the bar's personnel "moved too slowly to notify security after the fight broke out, and that this delay was a proximate cause of [patron's] injuries"); *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992) (although the precise circumstances of a convenience store clerk's murder were unknown, evidence that clerk probably would be alive had employer provided proper security presented fact issue whether employer's failure to provide such security was cause in fact of death); *Dickinson Arms-REO, L.P. v. Campbell*, 4 S.W.3d 333, 349-50 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (evidence sufficient to support jury's finding of cause in fact where evidence that additional security measures such as access gates probably would have prevented attack at apartment

11

complex); *Lincoln Prop. Co. v. DeShazo*, 4 S.W.3d 55, 62 (Tex. App.—Fort Worth 1999, pet. denied) (evidence sufficient to support jury's finding of cause in fact where evidence that presence of additional security guards probably would have prevented attack); *Garcia v. Fifth Club, Inc*., No. 03-03-00697-CV, 2005 Tex. App. LEXIS 861, at *11-14 (Tex. App.—Austin Feb. 3, 2005, pet. denied) (mem. op.) (plaintiff who was shot in the parking lot adjoining a bar established that material fact issue existed whether club's negligence—the failure to provide adequate security and the failure to coordinate inside and outside security—was a cause in fact of injury).

This case is unlike cases against premises owners in which courts have concluded that there was no evidence that the defendant's negligence was a cause in fact of the plaintiff's injury. *See, e.g.*, *East Tex. Theatres, Inc. v. Rutledge*, 453 S.W.2d 466, 468-69 (Tex. 1970) (finding no cause in fact because no evidence that, had a theater operator removed "rowdy persons" from a balcony, the person who injured the plaintiff would have been removed); *Price v. Ford*, 104 S.W.3d 331, 332-33 (Tex. App.—Dallas 2003, pet. denied) (no evidence of cause in fact because no evidence that bar's security guards could have responded within 30 seconds to prevent injuries of bar patron who was beaten for three minutes with pool cue); *Yarborough v. Erway*, 705 S.W.2d 198, 202-03 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (no evidence of cause in fact where fight occurred suddenly and no evidence that bar employees could have taken any action to prevent injuries "even if they had known the fight was imminent").

Further, to the extent the majority relies upon our sister court's analysis in *Jea v. Cho*, 183 S.W.3d 466 (Tex. App.—Houston [14th Dist.] 2005, no pet.), that case is inapposite. Although the facts in that case involved an employee who was injured during a robbery at a convenience store,

12

the convenience store was a walk-in store, and the court found the lack of "empirical data" and "expert" opinion significant to the determination of whether the security measures asserted by the employee—a key to lock the door from the inside, proper exterior lighting, and the presence of a second employee—would have prevented the robbery. *Id*. at 468-69. In contrast, the jury here did not need assistance to determine that a secure transaction window at this type of store would have prevented Hussain's injury. *See Honeycutt*, 24 S.W.3d at 361 (jury did not need assistance to determine whether lack of a top railing was unreasonable).

"The division of labor between judges and juries is an important one. Who decides what happened, whether the conduct of the actors involved violated applicable standards of care, and the institutional deference accorded those determinations in the litigation process are critical questions." William V. Dorsaneo, III, *Judges, Juries, and Reviewing Courts*, 53 SMU L. Rev. 1497, 1537 (Fall 2000). Given the jury's collective common sense and general experience, the evidence was far from "mere conjecture, guess, or speculation" that the failure to provide a secure transaction window was a proximate cause of Hussain's injury. *See Doe*, 907 S.W.2d at 477. The majority nonetheless throws the jury's determination out the window it now finds. I therefore respectfully dissent.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Filed: October 22, 2010

13