**Affirmed and Opinion Filed August 28, 1998**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-96-00941-CV

---

**JUANITA OROZCO and NATIVIDAD OROZCO, SR., Individually and as
Next Friends of CHRISTOPHER STEVEN OROZCO and BENJAMIN TAMES, Minors,
and RICHARD OROZCO, Appellants**

**V.**

**THE DALLAS MORNING NEWS, INC. d/b/a THE DALLAS MORNING NEWS,
and THE CITY OF DALLAS, Appellees**

---

### On Appeal from the 95th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 94-05705-D

---

## OPINION

Before Justices Chapman, Morris, and Wright
Opinion By Justice Morris

On a winter evening in 1992, Debra Orozco Tames and her young son, Christopher, were gunned down in their home by unknown gang members in retaliation for a murder allegedly committed by her brother several days earlier. The Orozco family sued the Dallas Morning News in negligence for publishing information indicating the location of their home. They also sued the City of Dallas in negligence for the manner in which the police handled

emergency 911 calls made from the Orozco home on the day of the shooting. The trial court granted summary judgment to the News and the City.

We must decide whether a newspaper can be held liable in negligence for publishing the street name and block number of a criminal suspect's home. We must also decide whether the City is immune from liability in this case. We conclude the News had no legal duty to refrain from publishing the address and, therefore, the Orozcos' negligence claim fails. We also conclude the City cannot be held liable because of its governmental immunity. We affirm the trial court's summary judgment.

## Factual Background

The facts are not disputed. Debra Orozco Tames lived in her parents' house with her children and her brother, Natividad Orozco, Jr. In late November 1993, the police arrested Natividad for the murder of Victor Alvarez. Alvarez had been killed earlier in a "drive-by" gang-related shooting involving a red Pontiac. The Pontiac belonged to the mother of Debra and Natividad, Jr.

On December 2, 1993, the Dallas Morning News published a newspaper article about the Alvarez murder. The article identified Natividad as one of the suspects who had been arrested for the murder. The article gave the street and block number, but not the specific address, of the Orozco home.

On the same day the newspaper circulated, anonymous callers telephoned the Orozco residence and threatened to retaliate for the Alvarez murder. Debra, who was home alone with her youngest child, contacted another brother, Richard. Richard came to the Orozco

residence to be with Debra. He called the police to report the harassing telephone calls, but no patrol car was sent to the residence.

Later that evening, Debra's mother came home from work and parked her Pontiac in front of the house. The car had not been parked there for long when shots were fired at the Orozco house. Richard Orozco again called police. Police officers came to the house and searched the neighborhood but found nothing. Some time later, the Orozcos' doorbell rang, and Debra went to answer the door. Upon opening the door, she and her son were hit with gunfire. Debra died from her wounds, and her son was injured.

## DISCUSSION

Appellants challenge the summary judgment granted in favor of both defendants. Summary judgment may be rendered in favor of a defendant if as a matter of law the plaintiff could not succeed on any of the theories pled. *See Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983). Specifically, for a defendant to prevail on summary judgment, it must either disprove at least one element of the plaintiffs' theory of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See International Union UAW Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex. App.--Dallas 1991, writ denied). Here, the Dallas Morning News moved for summary judgment seeking to disprove plaintiffs' theory of recovery. The City of Dallas, on the other hand, sought summary judgment on its affirmative defense of governmental immunity.

The standards for reviewing a summary judgment are well established. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Where, as here, the summary

-3-

judgment does not state the grounds upon which it was granted, an appellant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex. Civ. App.--Dallas 1980, no writ).

In this case, appellants asserted negligence claims. The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of the duty. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Duty is the threshold inquiry. If a duty does not exist, a defendant cannot establish liability in tort. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

We turn first to appellants' attack on the summary judgment signed in favor of the Dallas Morning News. The News argued in its motion for summary judgment that it owed no duty to appellants. Appellants maintain that the News had a duty to exercise reasonable care in deciding whether to publish the Orozcos' home address. They contend, therefore, that summary judgment was improper because they asserted a valid cause of action for common law negligence.

Generally, the existence of a duty is a question of law decided from the facts surrounding the occurrence in question. *See Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 233-34 (Tex. App.--Dallas 1993, writ denied). We determine whether a duty exists by applying a risk-utility balancing test. *Id.* at 234. The test balances several interrelated factors, including "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendants." *Id.* Foreseeability is the

-4-

most significant factor when using the risk-utility test. *See id.* Foreseeability is "what one should under the circumstances reasonably anticipate as consequences of his conduct." *Id.* (quoting *McCullough v. Amstar Corp.*, 833 S.W.2d 312, 315 (Tex. App.--Amarillo 1992, no writ)).

Appellants argue that the Dallas Morning News should have foreseen the shooting at the Orozco home because, in the year prior to the shooting, the newspaper printed several articles and editorials describing and decrying retaliatory violence between rival gang members and, specifically, their families. After reviewing the facts in the light most favorable to appellants, we conclude otherwise.

We are directed to no case imposing under Texas law a duty upon a newspaper to refrain from publishing what is a true, public, facially harmless, and newsworthy fact. We find instructive, however, the Fifth Circuit Court of Appeals' opinion in *Eimann*, which held that the Soldier of Fortune magazine "owed no duty to refrain from publishing a facially innocuous classified advertisement when the ad's context—at most—made its message ambiguous." *See Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830, 834 (5th Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990). The advertisement published by the magazine in *Eimann* offered the service of performing "high risk assignments." Through the ad, a man contacted and hired a hit man to kill his wife, and the wife's mother later sued the magazine for negligently publishing the advertisement. The evidence showed that the magazine editors were aware that certain other classified advertisements in the magazine were connected with criminal activity. Because of this evidence, the Fifth Circuit concluded that the probability and gravity of the threatened harm was high but that, due to the

-5-

ambiguous nature of the advertisement in question, the burden of preventing harm was also high. *See id.* at 835-36. Despite the editors' knowledge that other advertisements were connected to criminal activity, the court concluded the magazine had no duty to refrain from publishing the advertisement made the basis of the claim.

The record here presents a stronger case for concluding that no duty exists. Even taking all the evidence and allegations in favor of appellants, nothing indicates that the Dallas Morning News should have foreseen that the publication of the street and block number would lead to a retaliatory shooting at the Orozco home. The prior coverage of retaliatory gang violence by the News cannot itself transform the fundamentally innocuous and inoffensive nature of the information that appellants claim triggered the shooting of Debra Orozco Tames and her son into information from which the News should have reasonably anticipated violence. In short, the News' prior publication of articles depicting gang violence is not a rational method of gauging the likelihood that a particular later piece of information will foster specific criminal activity. Unlike the criminally-connected advertisements in *Eimann*, there is no evidence here that any of the previously reported gang violence was triggered by information published in the Dallas Morning News.

We also note that, with the exception that both events occurred on the same day, there is no evidence that the publication of the Orozco street and block number did have, in fact, anything to do with the shooting of Debra Orozco Tames and her son. The evidence does not even show whether the people responsible for the shooting had access to the newspaper article in question. In contrast, the presence of the red Pontiac was sufficient

-6-

itself to identify the Orozco home to anyone in the area intent on avenging the Alvarez murder.

We acknowledge that the gravity of the harm is high in this case. However, the probability that a person, even a gang member, would be induced to shoot innocent family members after reading a criminal suspect's general address in the newspaper is low—lower, certainly, than the probability that a man responding to a Soldier of Fortune advertisement soliciting "high risk assignments" would hire a hit man to kill his wife. As the opinion in *Davidson v. Time Warner, Inc.* succinctly put it, the evidence illustrates the common sense difference between *Eimann* and this case. *See Davidson v. Time Warner, Inc.*, No. V-94-006, 1997 WL 405907, at *11 (S.D. Tex. Mar. 31, 1997). In *Eimann*, at least seven classified advertisements were tied to crimes or criminal plots. *Eimann*, 880 F.2d at 832. Here, there is no evidence that publication of a criminal suspect's street name and block number inspires retaliatory crime. We conclude, therefore, that the likelihood of injury in this case is low.

Conversely, the burden of guarding against injury and the consequences of placing that burden on the Dallas Morning News are very high. The reporting of crimes and arrests is an important newspaper function, and the public has the right under Texas law to be informed about criminal activity and criminal suspects, including where they reside. *See Hogan v. Hearst Corp.*, 945 S.W.2d 246, 250 (Tex. App.--San Antonio 1997, no writ) (arrest records, including the accused's address, are public records unless their release would impede an ongoing investigation or endanger a confidential informant). Moreover, requiring a newspaper to omit a criminal suspect's street name and block number from news articles would accomplish little in the way of preventing an intentional criminal act of revenge: a

suspect's address may be obtained easily from an arrest report, as it was in this case, or even a telephone directory, if the suspect's name is available. Given the facially inoffensive nature of the information published in this case, it would be unduly burdensome to require a newspaper to edit all neutral facts in an effort to prevent revealing a criminal suspect's identity or whereabouts.

As an alternative theory for summary judgment, the Dallas Morning News also asserted that imposing liability in this case would violate the freedom of press provided by the First Amendment and article I, section 8 of the Texas Constitution. U.S. CONST. amend. I; TEX. CONST. art. I, § 8. Appellants challenge this ground on appeal. Although we need not reach the freedom of press arguments, we consider, as other courts have, the First Amendment's impact on the risk-utility analysis, given that its infringement may be a consequence of placing the burden to prevent injury on the News. *See Eimann*, 880 F.2d at 836-37; *Way*, 856 S.W.2d at 236.

Several holdings in the Texas courts reflect society's keen interest in a press free to report newsworthy facts. For example, the First Amendment immunizes the reporting of true, private facts in a newspaper when discussed in connection with matters that are of legitimate public interest. *McNamara v. Freedom Newspapers, Inc.*, 802 S.W.2d 901, 904 (Tex. App.-- Corpus Christi 1991, writ denied). Moreover, once information is made a matter of public record, the protection accorded freedom of speech and press may prohibit recovery for injuries caused by the further disclosure of and publicity given that information. *Hogan*, 945 S.W.2d at 250. As we have already noted, a criminal suspect's address contained in an arrest report is considered public information. *Id.* Additionally, the

-8-

protection provided to the press under article I, section 8 of the Texas Constitution is no less than that provided by the First Amendment. *McNamara*, 802 S.W.2d at 904. For all these reasons, we conclude the protection afforded by the First Amendment and Article I, section 8 of the Texas Constitution weighs heavily in favor of the Dallas Morning News and against appellants.

We conclude that the risk, foreseeability, and likelihood of injury in this case are outweighed by the social utility of crime reporting, the burden that would be borne by the News to prevent injury, and the consequences of placing that burden on the News. In summary, the Dallas Morning News had no duty to refrain from publishing Natividad Orozco, Jr.'s street name and block number. We overrule appellants' first point of error and need not reach their second or third point of error. Appellants having failed to show each and every ground for summary judgment was improper, we affirm the summary judgment signed in favor of the Dallas Morning News.

We now turn to appellants' attack on the summary judgment signed in favor of the City of Dallas. The City's motion for summary judgment urged, among other things, that the suit was barred as a matter of law by the doctrine of governmental immunity.

A city is immune from liability for its governmental actions unless that immunity is waived. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995). The Texas Tort Claims Act waives governmental immunity for injury and death caused by employees acting within the scope of employment or caused by the condition or use of tangible personal or real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). The act does not apply, however, to a claim arising "from the failure to provide or the method of

-9-

providing police or fire protection." *See id.* § 101.055(3). Thus, the government is immune from liability if the negligence that causes injury lies in the formulation of policy, such as whether and how to provide police protection, but the government might be liable if an officer acts negligently in carrying out that policy. This provision was intended to avoid judicial review of the discretionary policy decisions that governments must make in deciding how much, if any, police or fire protection to provide for a community. *See State v. Terrell,* 588 S.W.2d 784, 786-87 (Tex. 1979).

The City urges that the evidence conclusively establishes that the police officers' actions conformed at all times with all applicable policies of the police department. Therefore, the City contends appellants' lawsuit is actually a claim arising "from the failure to provide or the method of providing police or fire protection" and is barred by section 101.055(3) of the tort claims act. Conversely, appellants maintain in their fourth point of error that material fact issues exist with respect to whether the claim arose from the negligent implementation of existing police policies. In their fifth point of error, appellants contend summary judgment was improper for the additional reason that the City did not negate the allegation that injury was caused by the "condition or use of tangible personal property."

The City, being the party that moved for summary judgment on an affirmative defense, has the burden of proving all elements of that defense as a matter of law such that there is no genuine issue of material fact. *See* TEX. R. CIV. P. 166a(c); *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex. 1991). Once the defendant produces sufficient evidence to establish a right to summary judgment, the plaintiff must set forth sufficient

-10-

evidence to give rise to a genuine issue of material fact. *See Pinckley v. Gallegos*, 740 S.W.2d 529, 531 (Tex. App.--San Antonio 1987, writ denied).

The City's summary judgment proof consists of affidavits from one patrol officer, several police department employees, and an executive assistant chief of police, in addition to police department general orders, standard operating procedures, a training bulletin, and records of the 911 calls made from the Orozco residence on the day of the shooting. Viewed as a whole, the evidence shows that the police department employees responded to the 911 calls in accordance with departmental procedure.

In response, appellants presented the affidavits of Richard Orozco and James Gringer, a police agency consultant. Neither of these affidavits, however, raises a fact issue with respect to whether the Dallas police violated existing policies or procedures. Orozco's affidavit merely states that he initially called the police department's gang unit to report the threatening telephone calls his sister had received, but the gang unit told Orozco to call 911 instead. There is no evidence that this response was contrary to police procedure.

Gringer's affidavit makes several conclusions in an attempt to raise a material fact issue about whether the actions of police department employees complied with departmental procedure. Gringer first concludes that the police department's gang unit policies fall short of nationally established standards and practices. This is merely a challenge to the existing policy and is explicitly prohibited by section 101.055(3) of the tort claims act. As such, it raises no material fact issue that would prevent summary judgment.

Next, Gringer asserts that the gang unit failed to comply with existing departmental policies pertaining to threats reported by Richard Orozco to the gang unit. Gringer lists

-11-

twenty-one separate alleged failures. But his statements are mere conclusions and he neglects, moreover, to provide proof of the policies themselves. As such, the affidavit is insufficient as a matter of law to raise a fact issue with respect to whether gang unit employees complied with the gang unit's procedure. *See* TEX. R. CIV. P. 166a(f); *Menchaca v. Menchaca*, 679 S.W.2d 176, 178 (Tex. App.--El Paso 1984, no writ).

In his affidavit, Gringer also asserts that the Dallas Police Department failed to train and supervise members of the department's communications section in accordance with existing policies. Gringer asserts this lack of training caused personnel to schedule "erroneously" a serious, gang-related event for handling by the telephone expediter unit rather than the police gang unit. This allegation fails to raise a material fact issue affecting summary judgment because it merely challenges the City's method of handling reports of telephone harassment that are gang-related. The uncontroverted evidence shows that, currently, the City does not distinguish between telephone harassment and gang-related telephone harassment. Thus, Gringer's affidavit does not raise a fact issue regarding whether the telephone harassment complaint was handled according to the current departmental policy.

Gringer next asserts that patrol personnel failed to comply with Roll Call Training Bulletin 93-2, entitled "Random Gunfire Response Procedures." First, Gringer fails to raise an issue relating to the City's evidence that the bulletin is suggestive, rather than a mandatory departmental procedure. Second, assuming the bulletin is mandatory, it only prohibits officers from using the "N-code System" on "6G-Random Gunfire" calls. Gringer asserts the department N-Coded two "calls" from Richard Orozco on December 2, 1993.

-12-

This fails to show non-compliance with the bulletin's prohibition because Gringer does not claim those calls were, in fact, "6G-Random Gunfire" calls.

Finally, Gringer generally asserts that the police department failed to take reasonable and prudent action in response to frequently and clearly reported threats to the safety of the occupants at the Orozco home. This is a general conclusion, lacks any assertion of fact, and therefore raises no genuine material fact issue that might prevent summary judgment. *See Sorrells v. Giberson*, 780 S.W.2d 936, 938 (Tex. App.--Austin 1989, writ denied).

The City met its burden to prove its governmental immunity defense by showing that appellant's claims arose from the alleged failure to provide or the method of providing police protection. Appellants' summary judgment evidence raises no material fact issue with respect to whether their claim arose from the negligent implementation of existing police policies. Accordingly, we overrule appellants' fourth point of error.

In their fifth point of error, appellants contend that summary judgment was improper because the City did not present any evidence to negate the allegation that the injuries were caused by the condition or use of tangible personal property. As already noted, the Texas Tort Claims Act waives governmental immunity for injury and death caused by employees acting within the scope of employment or caused by the condition or use of tangible personal or real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). Waiver does not apply, however, to any claim arising "from the failure to provide or the method of providing" police protection. *See id.* § 101.055(3).

We have already concluded that appellant's claims arise from the alleged failure to provide or the method of providing police protection and, as such, the City retains immunity

-13-

under section 101.055(3). Therefore, we need not address whether the evidence shows a viable cause of action under section 101.021, which by force of section 101.055(3) is not applicable. *See Zacharie v. City of San Antonio*, 952 S.W.2d 56, 59 (Tex. App.--San Antonio 1997, no writ). We overrule appellants' fifth point of error.

We affirm the trial court's summary judgment.

JOSEPH B. MORRIS
JUSTICE

Publish
Tex. R. App. P. 47
960941F.P05

-14-