Warren D. CALDWELL and Laura S. Caldwell, Appellant,

v.

David N. CURIONI, Appellee.

No. 05–03–00135–CV.

Court of Appeals of Texas, Dallas.

Jan. 7, 2004.

Rehearing Overruled Feb. 10, 2004.

Larry M. Lesh, Dallas, for appellant.

Hubert A. Crouch, III, Dallas, for appellee.

Before Justices JAMES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

Appellants Warren and Laura Caldwell ("Caldwells") brought suit against appellee David Curioni for damages for personal injuries and property damage allegedly caused by the infestation of toxic mold in the house the Caldwells rented from Curioni. The trial court granted Curioni's motions for summary judgment pursuant to Texas Rule of Civil Procedure 166a(c) and 166a(i). The Caldwells assert seven issues on appeal. In issues one through four, the Caldwells assert that: 1) the trial court erred in granting Curioni's traditional summary judgment motion because Curioni failed to conclusively negate that he owed a duty to the Caldwells, 2) contributory or comparative negligence could not abrogate Curioni's duty to the Caldwells, and 3) an "as-is" provision in the lease did not bar the Caldwells' action against Curioni. In issues five through seven, the Caldwells assert the trial court erred in granting Curioni's no-evidence motion because the Caldwells presented evidence of genuine issues of material fact regarding:

1) whether Curioni breached his duty to the Caldwells, and 2) whether Curioni's breach of duty proximately caused the Caldwells' damages. Because we find Curioni failed to conclusively negate that he owed a duty to the Caldwells and that there were genuine issues of material fact regarding Curioni's breach of duty and causation of the Caldwells' damages, we reverse the judgment of the trial court and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The Caldwells filed a suit against Curioni, their landlord, for personal injuries and property damage to their furniture and belongings allegedly caused by the exposure to mold. As foundation for their suit, the Caldwells claim that in response to a newspaper ad describing a rental property as "freshly redone," they met Curioni's agent and walked through Curioni's house on Richland Drive on two occasions. During these visits, the Caldwells noticed an odor and questioned Curioni's agent about it. The agent told them the prior tenants had pets, but that the carpets had been thoroughly and professionally cleaned. During their second visit to the property, the Caldwells signed a lease. A handwritten note was added to the lease indicating there was a residual pet odor for which the Caldwells would not be held responsible, and the property was "as-is with refrige. ice maker not working."

Within a week of moving into the property the Caldwells allege they and their infant son became ill with a variety of symptoms including headaches, fever, diarrhea, and congestion. Mrs. Caldwell's sister, who came to stay with their son, noticed a swollen, water-damaged door, and upon further investigation, discovered greenish-black mold along the walls and in the carpet and carpet pad throughout the house. Mrs. Caldwell and her son moved out of the house that day. Mr. Caldwell stayed one more day, but after waking the next morning with severe nausea, vomiting, wheezing, and diarrhea, he also moved out.

The Caldwells contacted Baker, a friend in the construction business, who inspected the property and opined that the property had previously been flooded. After more extensive analysis, Baker offered his opinion that there had been a single catastrophic event which had flooded the house and resulted in the growth of a large quantity of mold. Baker also offered his opinion that Curioni's agent, as a former employee of a reputable drywall company, would have been aware of the dangers of mold at the time the Caldwells rented the property. Baker noted that the carpet tackboards had been freshly painted. He suggested this was an attempt to "cover up a serious problem." Baker noted that the water heater bore a sticker indicating it was installed in September of 1999, and the water records for the property showed a spike in water usage in September of 1999. Baker offered his opinion that the water heater had ruptured, flooded the property, and been replaced. Additionally, Baker opined that the work done to make the property ready for occupancy was inadequate and that "[a] reasonably prudent person who is in the business of renting properties to the public should have known the harmful effects of mold and should have been aware of, and cured the existence of mold in the Richland house."

The Caldwells also offered the opinion of Porter, a licensed real estate broker, that "David Curioni should have been aware of, and remediated, the mold prior to renting his house to the Caldwells." The Caldwells contacted the Texas State Department of Environmental Health, who advised them to stay out of the house until the mold problem was fixed and recom-

mended they hire Hulla, an industrial hygienist. Hulla collected and tested mold samples from the property and reported he found several strains of mold, including Stachybotrys, which produces a mycotoxin dangerous to humans. Also, Hulla reported on the amount of mold he discovered, but observed "[t]here are no established standards for permissible airborne fungal concentrations." The Caldwells consulted various doctors for treatment for themselves and their son regarding continuing problems they allege were caused by the mold. Reports from their doctors attributing their problems to exposure to mold were offered as summary judgment evidence by the Caldwells.

The trial court granted Curioni's traditional and no-evidence summary judgment motions. The Caldwells brought this appeal.

### STANDARD OF REVIEW

#### A. Summary Judgment Under Tex.R. Civ. P. 166a(c).

 This Court reviews a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The standards for reviewing a traditional summary judgment are well-established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A party moving for traditional summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000) (per curiam). When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in favor of the nonmovant. *Id.* at 23–24. To establish it is entitled to summary judgment a defendant must either disprove an element of the plaintiff's case or prove an affirmative defense. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Where, as here, the summary judgment does not state the grounds upon which it was granted, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.).

#### B. No–Evidence Summary Judgment Under Tex.R. Civ. P. 166a(i).

 Under Texas Rule of Civil Procedure 166a(i), after an adequate time for discovery, a party may move for summary judgment on the ground that no evidence exists to support one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 866 (Tex.App.-Houston [1st Dist.] 1999), *aff'd*, 73 S.W.3d 193 (Tex. 2002). The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. TEX.R. CIV. P. 166a(i); *see Brewer & Pritchard, P.C.*, 7 S.W.3d at 866–67; *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.-Dallas 2000, no pet.). Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Gen. Mills*, 12 S.W.3d at 832–33. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence

and inferences. *Id.; see Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Gen. Mills,* 12 S.W.3d at 833. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow,* 953 S.W.2d at 711.

### EXISTENCE OF A DUTY

■■■ In their second issue, the Caldwells argue Curioni failed to negate the existence of a duty owed by him to the Caldwells and, for that reason, Curioni's traditional motion for summary judgment should not have been granted. A lessor generally has no duty to tenants or their invitees for dangerous conditions on the leased premises. *Johnson County Sheriff's Posse, Inc. v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996). However, there are several exceptions to the general rule. A lessor who makes repairs may be liable for injuries resulting from the lessor's negligence in making the repairs. *Id.; see also* RESTATEMENT (SECOND) OF TORTS § 357 (1965). In addition, a lessor who conceals defects on the leased premises of which the lessor is aware may also be liable. *Johnson County Sheriff's Posse, Inc.,* 926 S.W.2d at 285; *see also* RESTATEMENT (SECOND) OF TORTS § 358 (1965).

■■■ The lessor need not have actual knowledge of a dangerous condition. It is enough that he has reason to know that the condition exists ... that is, that he has information from which a person of reasonable intelligence, or of his own superior intelligence, would infer that the condition exists, or would govern his conduct on the assumption that it does exist, and in addition would realize that its existence will involve an unreasonable risk of physical harm to persons on the land.

RESTATEMENT (SECOND) OF TORTS § 358 cmt. b. (1965). The existence of a landlord's duty to a tenant is a question of law for the court to decide from the facts surrounding the occurrence in question. *Coleman v. Equitable Real Estate Inv. Mgmt., Inc.,* 971 S.W.2d 611, 615 (Tex.App.-Dallas 1998, pet. denied).

The Caldwells argue there was sufficient summary judgment evidence to prove Curioni had reason to know, and should have known, of the infestation of mold and its potentially harmful effects. Further, they argue that when he advertised the house as being "freshly redone" he assumed the duty to exercise reasonable care for the protection of prospective tenants such as the Caldwells. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 837–38 (Tex. 2000).

It was undisputed that there was a foul odor in the house when the Caldwells signed the lease. The Caldwells acknowledged there was a pet odor and the parties agreed the Caldwells would not be held responsible for the odor at the end of the lease. Curioni argues this odor was not sufficient notice to charge him with constructive knowledge of the existence of toxic mold. Moreover, Curioni contends there was no evidence he knew or should have known there was mold in the house, no evidence there was mold when the Caldwells signed the lease, and no evidence the amount of mold was harmful.

■■■ However, the Caldwells offered the opinion of a construction expert who said that there was widespread mold growth throughout the house which had probably resulted from flooding caused by a ruptured water heater before the Caldwells had moved in. The expert offered

his opinion that the dangers of mold at the time the Caldwells signed the lease were well-known, and that Curioni's efforts to prepare the house for occupancy were "so lacking as to be non-existent." The expert noted that the carpet tackboards had been freshly painted, which he interpreted as an attempt to cover up a serious problem. Further, he observed that advertising the property as "freshly redone" under these circumstances indicated an attempt to deceive. In addition, the Caldwells offered the opinion of an industrial hygienist that a toxic strain of mold was present in the Richland house. Further, the Caldwells offered evidence that Curioni should have known of the mold problem at the Richland house, and made inadequate preparations for renting the house for occupancy. Under these circumstances, and in view of the standard described in section 358 of the Restatement (Second) of Torts, we conclude Curioni failed to conclusively negate he owed a duty to the Caldwells. *See* RESTATEMENT (SECOND) OF TORTS § 358 (1965). The Caldwells' second issue is resolved in their favor.

CONTRIBUTORY OR COMPARATIVE NEGLIGENCE

In their third issue on appeal, the Caldwells contend their contributory or comparative negligence cannot abrogate Curioni's duty to them. The Caldwells argue that Curioni is relying on the fact that they detected the odor in the Richland house as evidence of their contributory negligence. The Caldwells argue their negligence, if any, is irrelevant to Curioni's duty and the court should not have granted summary judgment against them based on their negligence. Curioni claims that contributory negligence was not made an issue by either party in Curioni's motions for summary judgment, and was not a basis for the court's grant of summary judgment.

To support their argument that the court incorrectly granted summary judgment based on the Caldwells' contributory negligence, the Caldwells cite us to assertions by Curioni in his reply brief, which was addressed to the trial court, that the odor which the Caldwells claim would have put Curioni or his agents on notice of the alleged hazardous condition was acknowledged by the Caldwells before they moved in. Curioni asserted that if the odor put a reasonable person on notice of the condition, then the Caldwells had notice. Further, the Caldwells cite the court's notation on the docket sheet to the effect that "if the odor put a reasonable person on notice, then both [Curioni] and [the Caldwells] had notice."

"In general, a docket entry forms no part of the record which may be considered; it is a memorandum made for the clerk's and trial court's convenience." *Guyot v. Guyot,* 3 S.W.3d 243, 246 (Tex. App.-Fort Worth 1999, no pet.). Because the docket sheet cannot be considered by us as a part of the record to determine the basis for the trial court's order, and it was not a defense expressly raised by Curioni, we must conclude the trial court did not grant summary judgment based on the Caldwells' contributory or comparative negligence. Because Curioni admits there is no dispute regarding whether an issue existed as to the Caldwells' contributory negligence, we conclude there is no dispute to resolve as to this issue. The Caldwells' third issue is moot.

AS IS CLAUSE

In their fourth issue on appeal, the Caldwells contend that an "as is" clause in the lease does not bar their cause of action. In the trial court, Curioni argued he was entitled to summary judgment as a matter of law because under paragraph 32 of the lease, the Caldwells agreed to accept the

house "as is." Under paragraph 32 titled "Special Provisions," the parties wrote in their own handwriting: "residual pet odor, tenant will try to improve but will not be held responsible for at end of lease; property is as-is with refrige. ice maker not working; $275 pet deposit for dog under 30 # s." Curioni argues the meaning of this paragraph is that the parties explicitly agreed the Caldwells took the property "as is," and, therefore, Curioni was not liable to the Caldwells for personal injuries due to any condition found on the property. Additionally, Curioni argues the provisions of this paragraph 32 control over the provisions of another, "as is" paragraph of the lease, paragraph 17. This paragraph provides "[t]enant has inspected and accepts the Property AS IS except for conditions materially affecting the safety or health of ordinary persons or unless expressly noted otherwise in this Lease."

■■■ The interpretation of a written contract is a quest for the intention of the parties to it. *Reilly v. Rangers Mgmt., Inc.* 727 S.W.2d 527, 529 (Tex.1987). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Id.* "The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties." *Dedier v. Grossman,* 454 S.W.2d 231, 234 (Tex.Civ. App.-Dallas 1970, writ ref'd n.r.e.). If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

> In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, courts should ex-

amine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless.

*Id.* (emphasis in original) (citations omitted).

The Caldwells argue the lease is not ambiguous and the "as is" provisions can be interpreted consistently with each other. Alternatively, the Caldwells argue that even if the lease is ambiguous, summary judgment would not be proper because the interpretation of the lease would be a question of fact for the jury. *Reilly,* 727 S.W.2d at 529. Curioni contends there is no ambiguity.

■■■ The provisions here are not ambiguous. The handwritten "as-is" provision of paragraph 32 of the lease refers to the inoperative condition of the "refrige. ice maker." The Caldwells have made no complaint regarding the refrigerator icemaker. Examining the entire writing to harmonize and give effect to all its provisions, paragraph 32 is not inconsistent with paragraph 17, and the provisions of paragraph 17 are not reduced or modified. The Caldwells took the property "as is," except for conditions materially affecting the safety or health of ordinary persons. We conclude the "as-is" provisions of the lease did not bar the Caldwells' causes of action against Curioni. The Caldwells' fourth issue is decided in their favor.

NO-EVIDENCE SUMMARY JUDGMENT MOTION

In their fifth, sixth, and seventh issues, the Caldwells contend that Curioni's no-evidence motion for summary judgment should not have been granted because they have presented more than a scintilla of evidence to raise a genuine issue of material fact. *See McClure v. Rich,* 95 S.W.3d 620, 623 (Tex.App.-Dallas 2002, no pet.). The Caldwells argue they offered sufficient evidence to create a fact issue regarding

whether Curioni breached a duty of care to them, and whether such breach was the proximate cause of their damages.

To establish breach of duty, the plaintiff must show either that the defendant did something an ordinarily prudent person exercising ordinary care would not have done under those circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care. *Lincoln Prop. Co. v. DeShazo,* 4 S.W.3d 55, 61 (Tex.App.-Fort Worth 1999, pet. denied). The resolution of a defendant's possible breach of duty is a question of fact. *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 933 (Tex. App.-San Antonio 1989, writ denied).

The Caldwells offered the affidavits of two experts who stated that in their opinion "Curioni had reasons [sic] to have known of the infestation and hazardous consequences of the mold in the dwelling." One of the experts stated in his report "A reasonably prudent person who is in the business of renting properties to the public should have known the harmful effects of mold and should have been aware of, and cured the existence of mold in the Richland house." These affidavits were made on the basis of personal knowledge of the affiants, and their reports set forth in detail the basis for that knowledge. *See City of Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.,* 890 S.W.2d 459, 467 (Tex.App.-Dallas 1994), *aff'd,* 904 S.W.2d 656, 660–61 (Tex. 1995).

Curioni argues the Caldwells have failed to produce any evidence demonstrating the amount of mold in the house was dangerous and therefore have not met the threshold requirement of showing there was a dangerous condition for which he could be held liable. *See Johnson County Sheriff's Posse, Inc.,* 926 S.W.2d at 287 (holding dirt containing small rocks was not an unreasonably dangerous condition for which a landlord could be held liable). The affidavits and reports of the two expert witnesses offered by the Caldwells presented facts regarding the amount and types of mold found at the Richland house and on the Caldwells' furniture taken from the Richland house. Both reports confirmed the presence of several types of mold. One of the reports confirmed the presence of Stachybotrys, which, according to the report, produces a mycotoxin documented as toxic to humans. Although Curioni correctly points out the expert admitted in his report "[t]here are no established standards for permissible airborne fungal concentrations," the lack of any established standards does not confirm that the levels of mold present were not dangerous.

In support of their contention that their physical problems were caused by exposure to mold, the Caldwells offered the affidavits of several doctors they consulted for treatment for themselves and their son. In their reports, the doctors specified the basis for their opinions and stated that they observed a multitude of physical problems in the Caldwells which were caused by exposure to mold infestation.

The two elements of proximate cause are cause in fact and foreseeability. *Lincoln Prop. Co.,* 4 S.W.3d at 60. "Cause in fact" means the act or omission was a substantial factor in bringing about the injury and without it harm would not have occurred. *Id.* "Foreseeability" means a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others. *Id.* The question of proximate cause is normally one for the jury. *Rudolph,* 763 S.W.2d at 933. In reviewing a no-evidence summary judgment under rule 166a(i), we review the evidence in the light most favorable to the nonmovant and disregard all contrary evi-

dence and inferences. *See McClure*, 95 S.W.3d at 623. The Caldwells have offered evidence: 1) that Curioni had reason to know and that he had information that would infer that there was an infestation of mold in the Richland house, 2) that there were potentially harmful effects of mold, 3) that he should have cured the mold problem before renting the house to the Caldwells, and 4) that his failure to eliminate the mold before the Caldwells occupied the house caused their physical injuries and property damage. The Caldwells have offered more than a scintilla of evidence that Curioni breached a duty to them and, thereby, caused their damages. We resolve the Caldwells' fifth through seventh issues in their favor.

CONCLUSION

Having determined that Curioni failed to conclusively negate he owed a duty to the Caldwells, that issues two and four are decided favorably to the Caldwells and issue three is moot, we conclude that issue one is resolved favorably to the Caldwells; that is, Curioni's traditional motion for summary judgment should not have been granted. Further, since we have concluded that the Caldwells' fifth through seventh issues should be decided in their favor, that is, that the Caldwells have offered more than a scintilla of evidence of the breach of that duty and resulting damage, we conclude the trial court erred in granting summary judgment in Curioni's favor. We reverse the trial court's judgment and remand this case for further proceedings.