**Affirmed and Opinion Filed August 25, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01407-CV

**CHRISTIAN CARE CENTERS, INC., Appellant**
**V.**
**REBECCA O'BANION AND JANIS L. WOOD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES OF THE ESTATE OF J.D. RICHMOND, DECEASED, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-12201**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Bridges

Christian Care Centers, Inc. (CCC) appeals the trial court's judgment in favor of Rebecca O'Banion and Janis L. Wood, individually and as personal representatives of the estate of J.D. Richmond. In four issues, CCC argues the evidence was legally insufficient to establish that (1) a drainage grate on CCC's property was an unreasonably dangerous condition, (2) CCC failed to make its drainage grate safe or failed to warn Richmond, (3) Richmond's death was foreseeable, and (4) O'Banion and Wood suffered compensable mental anguish. In two issues on cross-appeal, Wood and O'Banion argue the trial court erred in submitting Richmond's negligence to the jury and in refusing to submit issues on gross negligence and exemplary damages. We affirm the trial court's judgment.

In May 2007, Richmond moved in to Bentley Assisted Living Facility (Bentley), operated by CCC. Richmond had two daughters, Wood and O'Banion. Wood visited her father approximately twice each week and, despite living in Houston, O'Banion visited him and spoke with him regularly. CCC's activities director, as well as nurses who worked at CCC, discussed Richmond's need for a walker with Wood. Wood purchased a walker, and Richmond began using it.

CCC encouraged its residents to exercise and provided a path on CCC property. The markings enabled residents to measure the distance they walked. The path went downhill on a road to a set of speed bumps and a drainage grate. There was a mirror and a road sign to warn traffic that pedestrians were present.

On September 12, 2007, Linda Morrison, CCC's vice president of operations, was walking on a sidewalk on CCC property when she saw Richmond sitting on his walker. Richmond was "riding on the seat" and "propelling [the walker] with his feet." Richmond's "back was facing down towards the incline that he was about to approach." Morrison called out to Richmond to "be careful" and "slow down." No one saw Richmond fall, but a maintenance worker found Richmond laying on a drainage grate with his legs on top of the walker. He said he was fine, but CCC insisted that he go to the hospital. Richmond subsequently died from injuries related to the accident.

Woods and O'Banion sued CCC, asserting CCC was negligent in, among other things, encouraging residents to roam the grounds freely without supervision or accompaniment, designing a walking path in such a manner that it crossed over a drainage grate, failing to adequately warn Richmond, and failing to post a warning sign.

At trial, Wood testified she loved her father, and O'Banion was "very upset" when Wood told O'Banion Richmond was injured. When Wood saw her father in the hospital, he had "a tube

down his throat and all sorts of machines on him," but he tried to raise his arm in acknowledgment when she arrived. Wood was shown Richmond's CAT scan and told that Richmond was not going to recover and it would be best to remove Richmond from life support. Richmond's condition deteriorated rapidly. Wood went home to wait for O'Banion to drive from Houston, and they decided to remove Richmond from life support the next day. The hospital asked Wood to donate Richmond's tissues and bones. Wood and O'Banion watched their father die after hospital staff removed Richmond's respirator. After Richmond's death, Wood was "not sure" how long it was before she "got a decent night's sleep." Wood "relive[d] everything in [her] mind, and we didn't know things like how long he laid there." It was "about a month" before Wood "resumed everything she was doing," including returning to her volunteer work.

O'Banion testified she received a call from Johnnye Okoli at CCC that Richmond "had fallen and hit his head." O'Banion asked Okoli how it had happened, and Okoli said "the walker wheel had become stuck in the grate, he'd fallen over and hit his head." Okoli said Richmond "was talking, that he had hurt his head and had a cut on his head, and that he had skinned his elbow as well." Okoli said the ambulance was there, and they were going to take Richmond to the hospital. Before Richmond's condition suddenly changed, O'Banion was not able to speak to him because there was not a phone available in the hospital room. O'Banion felt guilty because she was not there and was not able to speak to him on his last day. O'Banion had difficulty sleeping for a month after Richmond's death, and the stress affected her diabetes.

Rob Runnels, CCC's director of facilities, testified he had seen residents walking on the road where Richmond was injured. Runnels testified the road could be dangerous to residents with mobility problems. Runnels warned residents with "mobility issues" not to "walk down there." Runnels admitted that CCC could have put a sign indicating that the road was not a

pedestrian path. Runnels testified the drainage grate was designed by a civil engineer to hold the amount of water and debris that runs down from two hills.

Sue Nelson, formerly in charge of Bentley, testified she inspected the area where Richmond fell after his fall. Nelson testified that, in her opinion, the area was not unsafe. Nelson testified she did not know how long the mile markers had been beside the road or who put them there, but she was aware that seniors walked on the road. To Nelson's knowledge, CCC did not do "anything to warn seniors not to go down there."

The court's charge asked the jury to find what percentage of negligence, if any, should have been attributed to CCC, Richmond, and Wood. The charge submitted the issues of Wood's and O'Banion's past and future loss of companionship and society and past and future mental anguish. The jury found CCC and Richmond were each fifty percent negligent and Wood was not negligent. The jury awarded O'Banion zero damages for past and future loss of companionship and $7500 for mental anguish suffered because of Richmond's death. The jury awarded Wood $30,000 for past loss of companionship and society, $10,000 for future loss of companionship, $40,000 for past mental anguish, and $15,000 for future mental anguish. The jury awarded Richmond $20,000 for the pain and mental anguish experienced before his death. The trial court entered judgment reducing these amounts by half due to Richmond's being fifty percent at fault. This appeal followed.

In its first two issues, CCC challenges the sufficiency of the evidence to establish (1) a drainage grate on CCC's property was an unreasonably dangerous condition, (2) CCC failed to make its drainage grate safe or failed to warn Richmond.

When considering the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support the jury's finding, disregarding all evidence to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992). If the record contains any evidence of

probative force to support the jury's finding, the finding will be upheld. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

A property owner's duty is decided by the court as a question of law and is dependent on factors like foreseeability, risk of injury, and the burden on the owner. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010). Generally, premises owners have a duty to protect invitees from, or warn them of, conditions posing unreasonable risks of harm if the owners knew of the conditions or, in the exercise of reasonable care, should have known of them. *See TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764–65 (Tex. 2009). To recover on a premises liability theory, a plaintiff must establish that the injury resulted from a condition of the premises. *Keetch v. The Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). A plaintiff must prove:

> 1) actual or constructive knowledge of some condition on the premises by the owner/operator;
>
> 2) that the condition posed an unreasonable risk of harm;
>
> 3) that the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and
>
> 4) that the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998), *See also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).

The duty owed by a property owner is to exercise reasonable care to protect against dangerous conditions on the premises that create an unreasonable risk of harm which it knew about, or by the exercise of reasonable care, would have discovered. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000). The threshold requirement for a premises liability claim is the existence of actual or constructive knowledge of a condition on the premises. *See Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). "An owner/occupier cannot breach a duty that it does not owe, and it does not owe a duty to correct an alleged dangerous condition of

–5–

which it is not aware." *Id.* at 4; *Gillespie v. Kroger Texas, L.P.*, 415 S.W.3d 589, 592 (Tex. App.—Dallas 2013, pet. denied). Ordinarily, an unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place injury occurs, not some antecedent situation that produced the condition. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006).

If the evidence conclusively establishes that the property owner adequately warned the injured party of the condition, then the property owner was not negligent as a matter of law. *Bill's Dollar Store, Inc. v. Bean*, 77 S.W.3d 367, 369 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). To be adequate, a warning must be more than a general instruction such as "be careful"; the warning must notify of the particular condition. *TXI Operations*, 278 S.W.3d at 765.

A property owner's warning to an invitee of an unreasonably dangerous condition is adequate if, given the totality of the surrounding circumstances, the warning identifies and communicates the existence of the condition in a manner that a reasonable person would perceive and understand. *Henkel v. Norman*, 441 S.W.3d 249, 253 (Tex. 2014) (per curiam).

Here, the jury saw pictures of the area where the incident occurred. The pictures of the area marked for walking showed the mirror, road sign, and mile markers that residents used to track their exercise. There was no sidewalk in the area at the bottom of the hill where the drainage grate and speed bumps were, yet CCC knew residents walked the road and permitted, encouraged residents to exercise, and allowed mile markers to mark the road, including the area where the drainage grate was. Runnels, CCC's director of facilities in charge of the campus's security, landscaping, and safety, testified that the area where the incident occurred could be dangerous to residents with mobility problems. He also said that he would warn those residents not to go down there. CCC did not warn residents of the specific condition at the bottom of the

hill, the drainage grate, but Runnels stated that CCC could have easily put up signs warning residents of that condition. Morrison testified she saw Richmond just before the incident, and he was sitting on his walker pushing it backwards with his feet. She told him to "be careful" and "slow down" but did not intervene or warn him of any particular peril. From this evidence, we conclude the evidence was legally sufficient to establish the drainage grate on CCC's property was an unreasonably dangerous condition, and CCC failed to make its drainage grate safe or failed to warn Richmond. *See Weirich*, 833 S.W.2d at 945; *TXI Operations*, 278 S.W.3d at 765; *Henkel*, 441 S.W.3d at 253. We overrule CCC's first and second issues.

In its third issue, CCC argues the evidence is legally insufficient to establish Richmond's death was foreseeable. The question of proximate cause is normally one for the jury. *Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex. App.—Dallas 2004, pet. denied). Proximate cause has two elements: cause in fact and foreseeability. *Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 887 (Tex. App.—Dallas 2007). These elements cannot be established by mere conjecture, guess, or speculation. *Id.* The test for cause in fact is whether the act or omission was a substantial factor in causing the injury and without which the harm would not have occurred. *Id.*; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Foreseeability means a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others. *Lincoln Prop. Co. v. DeShazo*, 4 S.W.3d 55, 60-61 (Tex. App.—Fort Worth 1999, pet. denied). Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998).

Here, the jury heard evidence that the drainage grate at the bottom of the hill had openings big enough to catch a cane, walker, or shoe, causing a senior to trip and fall. The grate was on a roadway where residents walked and where mile markers were set up to encourage

them to walk. Runnels testified that the area where the incident occurred could be dangerous to residents with mobility problems. Runnels knew some of the residents used walkers, and it was foreseeable that one of them could end up falling and hitting their head resulting in their death as a result of being tripped by the drainage grate. *See id.* We conclude the evidence was legally sufficient to establish that Richmond's death as a result of such a fall was foreseeable. *See Weirich*, 833 S.W.2d at 945. We overrule CCC's third issue.

In its fourth issue, CCC argues the evidence is legally insufficient to establish that O'Banion and Wood suffered compensable mental anguish. We apply a traditional no-evidence standard to a mental anguish finding to determine whether the record reveals any evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). In reviewing a jury's finding, we consider whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822-27 (Tex. 2005). We consider all of the evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. *Id.* at 822. It is well-settled that there must be both evidence of the existence of compensable mental anguish and evidence to justify the amount awarded. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011); *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002).

Mental anguish damages cannot be determined with mathematical precision but only through the exercise of sound judgment. *Bentley*, 94 S.W.3d at 605. A great deal of discretion is given to the jury in awarding an amount of damages it deems appropriate for pain and suffering. *HCRA of Texas, Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.).

While the impossibility of any exact evaluation of mental anguish requires that a jury be given a measure of discretion in finding damages, that discretion is limited and the jury must find an amount that, in the standard language of the jury charge, "would fairly and reasonably compensate" for the loss. *Saenz v. Fid. Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff has introduced direct evidence of the nature, duration, and severity of her mental anguish, thus establishing that there was a substantial disruption in her daily routine. *Parkway Co.*, 901 S.W.2d at 444; *O'Dell v. Wright*, 320 S.W.3d 505, 514 (Tex. App.—Fort Worth 2010, pet. denied). Evidence of past pain and mental anguish may be proven through a plaintiff's testimony or other evidence, including circumstantial evidence. *Telesis/Parkwood Retirement I, Ltd. v. Anderson*, 462 S.W.3d 212, 239 (Tex. App.—El Paso 2015, no pet.). In the absence of direct evidence of pain, the jury is permitted to infer the occurrence of pain from the nature of the injury. *Id.*

Here, Richmond was a healthy resident of CCC's facility, and Wood visited him often. O'Banion, who lived in Houston, also visited. After his fall, Richmond initially appeared only slightly injured. However, as Wood and O'Banion learned, Richmond's injuries became more serious over time. Wood was able to see Richmond at the hospital, and he acknowledged her but was unable to speak to her. O'Banion was unable to speak with Richmond before his death. Wood and O'Banion were faced with making the decision to take their father off life support and whether to donate his tissues and bones. Wood and O'Banion watched their father die from his injuries after he was removed from life support. Both Wood and O'Banion suffered sleeplessness and suffering as a result of Richmond's death. After Richmond's death, Wood was "not sure" how long it was before she "got a decent night's sleep." Wood "relive[d] everything in [her] mind, and we didn't know things like how long he laid there." It was "about a month"

before Wood "resumed everything she was doing," including returning to her volunteer work. The stress affected O'Banion's diabetes.

We conclude this evidence was legally sufficient to support the jury's finding that Wood and O'Banion suffered compensable mental anguish. *See id.* We overrule CCC's fourth issue.

In their first and second issues on cross-appeal, Wood and O'Banion argue the trial court erred in submitting Richmond's negligence to the jury and in denying Richmond jury issues on gross negligence and exemplary damages.

We review the trial court's decision to submit a particular question for an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990*); Henry v. Masson*, 333 S.W.3d 825, 848–49 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The trial court is required to submit to the jury a properly requested question that is raised by the pleadings and evidence and is necessary to enable the jury to render a verdict. TEX. R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002*); Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 617 (Tex. App.—Dallas 2010, no pet.). A trial court may refuse to submit a question only if there is no evidence in the record to warrant its submission. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 824 (Tex. App.—Dallas 2003, pet. denied); *see also Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992) (per curiam) (trial court erred by denying properly requested question on viable affirmative defense that was timely raised by pleadings and evidence).

A plaintiff's actions are taken into account in calculating recovery, but do not completely bar recovery unless his or her actions account for more than fifty percent of the responsibility or

satisfy the elements of the statutory affirmative defense in section 93.001. TEX. CIV. PRAC. & REM. CODE. §§ 33.001–.003, 93.001 (West 2015); *Dugger v. Arredondo*, 408 S.W.3d 825, 836 (Tex. 2013). A liable defendant is generally responsible only for the percentage of damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to those damages. TEX. CIV. PRAC. & REM. CODE ANN. § 33.013 (West 2015). We reverse and render only if no evidence—or less than a scintilla of evidence—exists to support the judgment. *Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 576 (Tex. App.—Houston [1st Dist.] 2004, no pet.). By its terms, Chapter 33 expressly applies to "any cause of action based on tort." TEX. CIV. PRAC. & REM. CODE § 33.002 (West 2015). The trier of fact shall determine the percentage of responsibility with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, or by other conduct or activity that violates an applicable legal standard. *See* TEX. CIV. PRAC. & REM. CODE § 33.003(a) (West 2015). The language of the statute indicates the Legislature's desire to compare responsibility for injuries rather than bar recovery, even if the claimant was partly at fault or violated some legal standard. *See Parker*, 565 S.W.2d at 518 (discussing article 2212a, which is now Chapter 33); *Dugger*, 408 S.W.3d at 831-32.

In reviewing an award for exemplary damages, the court conducts a legal sufficiency review under the "clear and convincing" evidence standard. *Garza*, 164 S.W.3d at 609. "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE § 41.001(2); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137-38 (Tex. 2012).

A corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence. *Anderson*, 462 S.W.3d at 250. Because a corporation can "act only through agents of some character," the court has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). A corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

Gross negligence consists of both objective and subjective elements. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Plaintiffs must prove by clear and convincing evidence that 1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See id.*; TEX. CIV. PRAC. & REM. CODE § 41.001(11); *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006). Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *See Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex. 1995). Under the first element, "extreme risk" is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *See Ung*, 904 S.W.2d at 641. Under the second element, actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *Ellender*, 968 S.W.2d at 921.

Here, Morrison testified Richmond was sitting on his walker pushing it with his feet toward the incline leading down to the area where the drainage grate and speed bumps were.

The walker was not designed to be ridden in this manner. This evidence alone raised the issue of Richmond's negligence, and the trial court therefore did not abuse its discretion in submitting the issue of Richmond's comparative responsibility to the jury. *See E.B.*, 802 S.W.2d at 649. We overrule Wood and O'Banion's first cross-point.

As to the gross negligence issue, CCC presented evidence showing that there had never been a similar accident in the area where Richmond fell. Runnels testified the drainage grate was designed by a civil engineer to hold the amount of water and debris that runs down from two hills. Under these circumstances, we conclude the trial court did not abuse its discretion in refusing to submit to the jury the issues of gross negligence and exemplary damages. *See Ellender*, 968 S.W.2d at 921; *E.B.*, 802 S.W.2d at 649. We overrule Wood and O'Banion's second cross-point.

We affirm the trial court's judgment.


121407F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTIAN CARE CENTERS, INC.,
Appellant

No. 05-12-01407-CV        V.

REBECCA O'BANION AND JANIS L.
WOOD, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVES OF
TEH ESTATE OF J.D. RICHMOND,
DECEASED, Appellees

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-12201.
Opinion delivered by Justice Bridges.
Justices Lang and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee REBECCA O'BANION AND JANIS L. WOOD, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES OF THE ESTATE OF J.D. RICHMOND, DECEASED recover their costs of this appeal from appellant CHRISTIAN CARE CENTERS, INC.

Judgment entered August 25, 2015.